**Forest Adrian TIMS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–88–144 CR.**

Court of Appeals of Texas, Beaumont.

Oct. 25, 1989.

Jimmie P. Price, Conroe, for appellant.

Thomas D. Glenn, Conroe, for appellee.

## OPINION

WALKER, Chief Justice.

A jury found appellant guilty of the offense of delivery of less than 28 grams of cocaine, a controlled substance. The jury assessed punishment at 28 years confinement in the Texas Department of Corrections. Appellant has perfected this appeal from the judgment of the trial court.

By his first point of error, appellant argues that the trial court erred in failing to dismiss the entire array of potential jurors upon finding that the prosecutor had exercised a peremptory challenge against a prospective juror on the basis of her race. Appellant argues that under *TEX.CODE CRIM.PROC.ANN.* art. 35.261 (Vernon 1989) there is but one mandatory remedy where it is shown that a prosecutor peremptorily struck prospective jurors because of their race. Appellant argues that article 35.261 mandates that the trial court must dismiss the entire array of potential jurors and call a new array. In the present case, the trial court did not dismiss the array and call a new one, he rather substituted Sammie Ruth Green; the potential juror he found to have been wrongly stricken by the State, on the jury in place of the person who would have otherwise been the twelfth juror chosen.

When the trial court informed the attorneys that he intended to remedy the discrimination he had found by reinstating the improperly stricken juror, appellant's counsel not only made no objection, he also agreed that such action was a proper remedy under the circumstances. Therefore, appellant has failed to preserve the error, if any was committed. *TEX.R.APP.P.* 52(a). Appellant's first point of error is overruled. Appellant's second point of error reads as follows:

"The trial court committed reversible error in accepting the peremptory challenge by the State of juror No. 3, Della M. Henry."

After the parties delivered their strike lists to the clerk, but before the jury was sworn, appellant moved the trial court to conduct a hearing pursuant to *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). It was stipulated that appellant is a black man, and that the State used two of its peremptory challenges to

strike two black potential jurors. The trial court then asked the prosecutors to give their reasons for striking the two black prospective jurors. One prosecutor stated that Mrs. Henry was stricken because she had stated during voir dire that she was a friend of appellant's family. The prosecutor felt that Mrs. Henry might not be able to impartially decide the case on the evidence presented. The other prosecutor stated that, at one point during voir dire, Mrs. Henry had indicated she would require the State to prove its case beyond all doubt rather than beyond a reasonable doubt. He said he was also concerned with allowing Mrs. Henry to serve on the jury because she lived in the neighborhood where appellant lived, and therefore might be reluctant to vote for a minimal punishment. The trial court found that the State had shown racially neutral reasons for striking Mrs. Henry.

During voir dire the following exchange occurred:

[Prosecutor]: ... Does anybody know [appellant]?

Mrs. Henry: I know him.

[Prosecutor]: How? Is he a friend or—

Mrs. Henry: Well, his family is friends, sure.

[Prosecutor]: Do you think that you can be fair to the State since he is a friend of yours?

Mrs. Henry: I couldn't decide.

Furthermore, Mrs. Henry stated at least three times that she would require the State to prove its case "beyond a shadow of a doubt" or "beyond all doubt" after being told that the State's burden was only beyond a reasonable doubt. Appellant seems to argue that since Mrs. Henry later stated she would follow the law and the court's charge, the State's apparently racially neutral reasons for striking Mrs. Henry were shown to be merely a pretext. *See Whitsey v. State*, No. 1121–87 (Tex. Crim.App. May 10, 1989) (not yet reported).

Under *Batson, supra,* once the defendant makes a prima facie showing of racially motivated peremptory challenges against members of the defendant's race,

the State must come forward with racially neutral explanations of the challenges complained of. *See Whitsey, supra.* The trial judge must evaluate the reasons given by the prosecutor in light of the circumstances of that trial to determine whether the explanations are merely a pretext. *Whitsey, supra.* An appellate court reviewing such decision by a trial court must examine the record and determine whether it supports the findings of the trial court when viewed in the light most favorable to the trial court's ruling. In the present case we find that the record supports the ruling of the trial court. Viewed in the light most favorable to the trial court's findings, the record does not show that the racially neutral explanations given by the prosecutors for striking Mrs. Henry were pretexts. Appellant's second point of error is, therefore, overruled.

By his fourth point of error appellant complains that the trial court erred in admitting an audio recording made by an undercover police officer because the State did not lay a proper predicate for its admission. Appellant's only specific complaint on appeal is that the State did not show the voluntary nature of the conversation contained on the tape as is required before such audio recording is admissible. *See Edwards v. State*, 551 S.W.2d 731 (Tex. Crim.App.1977).

■ The State's witness, Officer Williams, identified the tape as a recording of the conversation he heard between appellant and undercover Officer Gilmer on the night of the alleged offense. The tape was introduced and played for the jury over appellant's objection. In *Edwards, supra,* it was held that the voluntary nature of the conversation can be inferred from the facts and circumstances of each case. Appellant testified in his own behalf and described the conversation which occurred between himself and Officer Gilmer that evening to be virtually identical to the conversation revealed on the recording. Therefore, any error which may have been committed in introducing the tape recording was cured by appellant's own testimony. *See Purtell v. State*, 761 S.W.2d 360,

368 (Tex.Crim.App.1988). Furthermore, appellant's testimony also logically supports an inference that he voluntarily made the statements revealed on the recording. Appellant's fourth point of error is overruled.

■ Appellant asserts in his third point of error that the trial court erred in failing to instruct the jury on the defense of entrapment. The evidence showed that Officer Gilmer, who was carrying a hidden radio transmitter in his clothes, drove an unmarked car into the parking lot of the "Rose Room". Appellant testified Gilmer "begged" him to approach. Appellant came near the car, and Gilmer asked if he had seen Leggs or Smitty. Appellant then said he hadn't seen these people and asked Gilmer what he needed. Gilmer said Leggs or Smitty was supposed to get him some "rock" cocaine. Appellant then said he could get Gilmer anything he needed. Appellant got into Gilmer's car and directed him to another location where he agreed to procure a twenty dollar "rock" for Gilmer. Appellant asked Gilmer if they were going to smoke the cocaine together. Gilmer stated he would get Appellant high. Appellant then took a twenty dollar bill Gilmer gave him to a house while Gilmer waited in the car. Appellant returned with a small piece of "rock" or cocaine and gave it to Gilmer. Soon afterward, Appellant was arrested by Gilmer and the officers who had been listening to and recording the entire conversation.

*TEX.PENAL CODE*, sec. 8.06(a) (Vernon 1974) provides:

> "(a) It is a defense to prosecution that the actor engaged in the conduct charged because he was induced to do so by a law enforcement agent using persuasion or other means likely to cause persons to commit the offense. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment."

We feel that the conversation between appellant and Gilmer is of key importance to the question of entrapment. The record establishes that Gilmer told appellant that he [Gilmer] was looking for Leggs or Smitty who were suppose to get him [Gilmer] some "rock" cocaine. Appellant then stated "I can get you whatever you need." This statement originated in the mind of the appellant, not Gilmer. Furthermore, regarding the use of cocaine, appellant asked Gilmer if appellant and Gilmer were going to smoke it together. Again, this originated in the appellant's mind, not Gilmer's mind.

The promise to get appellant high on cocaine if he obtained cocaine he didn't possess and delivered it to Gilmer, a perfect stranger, is not "persuasion or other means likely to cause persons to commit the offense" charged. *Bush v. State*, 611 S.W.2d 428, 432 (Tex.Crim.App.1981) (opinion on rehearing). Such a promise is so unlikely to induce a person not already so disposed to commit the offense of delivery of cocaine as to not even raise the issue of entrapment. *See Bush, supra*, at 432. We find there is no other evidence in the record that even arguably raised the issue of entrapment. Rather, the evidence shows that appellant was eager to provide cocaine to Gilmer, and in fact he volunteered to do so. Appellant's third point of error is overruled and the judgment of the trial court is affirmed.

AFFIRMED.